**LANE BANK EQUIPMENT CO., Petitioner,**

v.

**SMITH SOUTHERN EQUIPMENT, INC., Respondent.**

No. 98–1031.

Supreme Court of Texas.

Argued Sept. 22, 1999.

Decided Jan. 6, 2000.

Rehearing Overruled March 3, 2000.

---

Walter J. Kronzer, III, Charles R. Kaufmann, Houston, for Petitioner.

John M. Mings, Houston, for Respondent.

Chief Justice PHILLIPS delivered the opinion of the Court, in which Justice BAKER, Justice ABBOTT, Justice HANKINSON, Justice O'NEILL and Justice GONZALES joined.

In this case, we decide whether a timely filed postjudgment motion seeking to add an award of sanctions to an existing judgment extends the thirty-day period in which a trial court may exercise plenary power over its judgment. The court of appeals held that such a motion qualified as a motion to modify, correct, or reform a judgment under Texas Rule of Civil Procedure 329b(g), thus extending the trial

court's plenary power to change its judgment beyond the initial thirty-day period. 981 S.W.2d 302. Because we agree, we affirm the court of appeals' judgment.

Lane Bank Equipment Company and Smith Southern Equipment, Inc., each design, install, and supply equipment to banks. In 1995, Lane sued Smith for unfair competition. Smith answered and subsequently sought to recoup its attorney's fees as a sanction, asserting that Lane's suit was frivolous. On the eve of trial, Lane nonsuited. The trial court granted the nonsuit without prejudice to Smith's claim for attorney's fees should Lane elect to refile suit.

Two weeks after the dismissal, Lane refiled, adding claims of tortious interference with contract and misappropriation of trade secrets to the former unfair competition complaint. After another year of litigation, the trial court granted Smith's motion for summary judgment. The trial court's order, signed on June 5, 1997, stated that "Defendant Smith Southern Equipment, Inc.'s Motion for Summary Judgment is granted."

Three weeks later, Smith moved for sanctions and for rendition of a new final judgment in the case. Smith alleged that Lane's claims were baseless and filed solely for purposes of harassment. *See* TEX. CIV. PRAC. & REM.CODE § 10.001(1), (3); TEX.R. CIV. P. 13. The trial court agreed; and on July 11, 1997, it signed an order stating that Lane's petition and discovery responses were "in bad faith and for the improper purposes of harassing and imposing needless costs upon Smith Southern." As a sanction for this conduct, the trial court awarded Smith more than $46,000 for attorney's fees and expenses reasonably incurred in defending the litigation, together with additional sums for appellate attorney's fees in the event Lane pursued an unsuccessful appeal. *See* TEX. CIV. PRAC. & REM.CODE § 10.002(c). The trial court also signed a new judgment on that date, referring to the previous order granting summary judgment in Smith's favor and awarding the attorney's fees and expenses found to be reasonable and necessary in the sanctions order. Lane appealed, and the court of appeals affirmed the summary judgment and sanctions. 981 S.W.2d 302.

In this Court, Lane abandons its attack on the summary judgment and focuses solely on whether the trial court had jurisdiction to render its July 11th order awarding sanctions. Lane contends that the original summary judgment signed on June 5, 1997, became final after thirty days so that the trial court's plenary power expired on July 5, 1997. Thus, Lane concludes the trial court had no authority to order sanctions on July 11, 1997.

A trial court retains jurisdiction over a case for a minimum of thirty days after signing a final judgment. TEX.R. CIV. P. 329b(d). During this time, the trial court has plenary power to change its judgment. *Check v. Mitchell,* 758 S.W.2d 755, 756 (Tex.1988). The period of plenary power may be extended, however, by timely filing an appropriate postjudgment motion. Thus, the filing of a motion for new trial, TEX.R. CIV. P. 329b(e), or a motion to modify, correct or reform the judgment, TEX.R. CIV. P. 329b(g), within the initial thirty-day period extends the trial court's jurisdiction over its judgment up to an additional seventy-five days, depending on when or whether the court acts on the motions. *Philbrook v. Berry,* 683 S.W.2d 378, 379 (Tex.1985); TEX.R. CIV. P. 329b(c). In this case, the court of appeals concluded that Smith's postjudgment motion for sanctions extended the trial court's plenary jurisdiction over the June 5th judgment as a motion to modify, correct or reform the judgment under Rule 329b(g). 981 S.W.2d at 303.

Lane argues that treating a postjudgment motion for sanctions as a Rule 329b(g) motion is inconsistent with our opinion in *Scott & White Memorial Hospital v. Schexnider,* 940 S.W.2d 594 (Tex. 1996). In that case we were asked wheth-

er a trial court had authority to render sanctions following a nonsuit but within the period of plenary jurisdiction. We held that the trial court's plenary power included the authority to act on a motion for sanctions. But because the sanctions order was signed within thirty days of the judgment, we did not consider whether the postjudgment motion for sanctions might also extend the court's plenary jurisdiction under Rule 329b(g). Although *Schexnider* did not resolve the issue now before us, Lane argues that our opinion nevertheless suggested that a postjudgment motion for sanctions was not a Rule 329b(g) motion that would extend a trial court's plenary jurisdiction.

This suggestion, Lane argues, arises from our discussion of *Hjalmarson v. Langley,* 840 S.W.2d 153 (Tex.App.—Waco 1992, orig. proceeding). *Hjalmarson,* however, did not consider the present issue, and Rule 329b(g) was not even mentioned. Instead, the court of appeals merely observed that because "inherent power" was not a substitute for plenary power, a court could not sanction a party after the expiration of its plenary jurisdiction. *Hjalmarson,* 840 S.W.2d at 155. In discussing the case, we agreed that sanctions could not be awarded after expiration of a trial court's plenary jurisdiction. *Schexnider,* 940 S.W.2d at 596.

Lane notes, however, that the sanctions motion in *Hjalmarson* was filed after the judgment and within the court's initial period of plenary jurisdiction and should therefore have extended the trial court's plenary jurisdiction if a postjudgment motion for sanctions is also a motion to modify under Rule 329b(g). As previously mentioned, the court in *Hjalmarson* did not expressly consider this issue. But implicit in its conclusion that the sanctions order was void was the assumption that the postjudgment motion for sanctions did

not extend the trial court's plenary jurisdiction beyond the initial thirty-day period. Lane thus contends that because we did not expressly disapprove of *Hjalmarson'*s jurisdictional assumption in *Schexnider,* we must have agreed with it, especially since we expressly rejected another part of the opinion.[1]

Lane's argument proves too much. The parties in *Hjalmarson* did not raise the application of Rule 329b, and the court of appeals assumed that the trial court's plenary power expired thirty days after the nonsuit. In discussing *Hjalmarson,* we likewise did not consider the implications of Rule 329b(g) because an extension of plenary jurisdiction was not necessary to our decision in *Schexnider.* Thus, although we agreed with *Hjalmarson'*s conclusion that a court could not levy sanctions after its plenary jurisdiction expired, that agreement cannot be construed as approval of *Hjalmarson'*s assumption about when the trial court's plenary jurisdiction ended.

Lane further contends that a motion for sanctions should not be construed as a Rule 329b(g) motion to modify because a sanctions motion concerns matters that are distinct from the substantive issues in the case. Thus, Lane argues that a sanctions motion seeks relief independent of the existing judgment and does not seek a change in the judgment as contemplated under Rule 329b(g). To support its argument, Lane relies on *Jobe v. Lapidus,* 874 S.W.2d 764 (Tex.App.—Dallas 1994, writ denied). Because the sanctions motion in *Jobe* preceded the court's judgment, however, the meaning and application of Rule 329b(g) were not at issue. The court of appeals merely dismissed the appeal, concluding that the trial court lacked jurisdiction when it rendered a second judgment, incorporating an award of sanctions, be-

---

1. The court in *Hjalmarson* also held that a defendant, seeking postjudgment sanctions following a nonsuit, had to move for reinstatement of plaintiff's case before it could obtain sanctions. *Hjalmarson,* 840 S.W.2d at 154.

In discussing *Hjalmarson,* we rejected the notion that reinstatement was a precondition to consideration of a timely filed postjudgment motion for sanctions. *Schexnider,* 940 S.W.2d at 596.

cause no Rule 329b motion had been filed to extend the trial court's plenary jurisdiction beyond the initial thirty-day period. *Id.* at 766.

Pertinent to Lane's present contention, the court in *Jobe* also concluded that the judgment did not have to resolve the pending sanctions motion to be final because a motion for sanctions "is not a pleading that frames issues which must be resolved in a final judgment." *Id.* Thus, the first judgment was final, even though a pending sanctions motion was left unresolved, because the judgment disposed of all parties and all issues in the pleadings.

While we agree that a judgment *does not have to resolve pending sanctions* issues to be final, that principle does not control this case. Even if a sanctions order *is not required to be included in a final* judgment, it may be included there. And a motion made after judgment to incorporate a sanction as a part of the final judgment does propose a change to that judgment. Such a motion is, on its face, a motion to modify, correct or reform the existing judgment within the meaning of Rule 329b(g).

A number of courts of appeals, beginning with *Brazos Electric Cooperative, Inc. v. Callejo,* 734 S.W.2d 126, 128 (Tex. App.—Dallas 1987, no writ), have said that a Rule 329b(g) motion must seek to substantively change the existing judgment to qualify as a motion to modify under subpart (g).[2] In this case, Smith's postjudgment motion for sanctions sought to change the court's June 5th judgment by adding an award of attorney's fees as a sanction for frivolous litigation. *See* Tex. Civ. Prac. & Rem.Code § 10.002(c). The motion accordingly proposed a substantive modification to the former judgment.

Although Smith's motion here satisfies the substantive requirement of *Callejo* and its progeny, Smith argues that its motion did not have to seek a substantive change to extend the trial court's plenary jurisdiction under our decision in *Check v. Mitchell,* 758 S.W.2d 755, 756 (Tex.1988). *Check,* however, was not concerned with a Rule 329b(g) motion. Instead, *Check* applied subpart (h) of this rule which provides that "[i]f a judgment is modified, corrected or reformed in any respect, the time for appeal shall run from the time the modified, corrected, or reformed judgment is signed...." Tex.R. Civ. P. 329b(h). In interpreting subpart (h), we held that "any change, whether or not material or substantial, made in a judgment while the trial court retains plenary power" restarts the appellate timetable. *Check,* 758 S.W.2d at 756. Applying *Check* here, Smith submits that because subparts (g) and (h) share the same triggering language, that of modification, correction or reformation of a judgment, they should be interpreted in the same way. Thus, if a change in the judgment, "whether or not material or substantial," triggers rule 329(h), then any timely postjudgment motion requesting such a change should also trigger Rule 329b(g).[3] We do not agree that subparts (g) and (h) share a common trigger.

---

2. *See Ramirez v. Williams Bros. Constr. Co.,* 870 S.W.2d 551, 552 (Tex.App.—Houston [1st Dist.] 1993, no writ); *United States Fire Ins. Co. v. State,* 843 S.W.2d 283, 284 (Tex.App.—Austin 1992, writ denied); *Miller Brewing Co. v. Villarreal,* 822 S.W.2d 177, 179 (Tex.App.—San Antonio 1991), *rev'd on other grounds,* 829 S.W.2d 770 (Tex.1992); *Home Owners Funding Corp. of Am. v. Scheppler,* 815 S.W.2d 884, 887 (Tex.App.—Corpus Christi 1991, no writ); *Cavalier Corp. v. Store Enter., Inc.,* 742 S.W.2d 785, 787 (Tex.App.—Dallas 1987, writ denied).

3. At least two courts have questioned whether Rule 329b(g) requires a substantive motion in light of our interpretation of subpart (h) in *Check,* 758 S.W.2d at 756. *See Cannon v. ICO Tubular Serv., Inc.,* 905 S.W.2d 380, 389 (Tex. App.—Houston [1st Dist.] 1995, no writ)(holding that timely filed postjudgment motion seeking only clerical corrections qualifies as a rule 329b(g) motion); *Miller Brewing Co.,* 822 S.W.2d at 179 n. 2 (applying requirement that motion seek substantive change but questioning why clerical change would not also be sufficient).

■ Rule 329b(h) provides that "[i]f a judgment is modified, corrected or reformed *in any respect*" the appellate timetable runs from the date of the new judgment. TEX.R. CIV. P. 329b(h)(emphasis added). Thus, in *Check,* we concluded that the appellate timetable should restart whenever a court changes its judgment whether or not the change is "material or substantial." *Check,* 758 S.W.2d at 756. Subpart (g), on the other hand, is not concerned with a court changing its judgment but rather with a party's request that some change be made. Rather than the expansive "in any respect" of subpart (h), subpart (g) begins, "[a] motion to modify, correct, or reform a judgment (as distinguished from motion to correct the record of a judgment under Rule 316)" extends the trial court's plenary jurisdiction and the appellate deadlines as would a motion for new trial. Subpart (g)'s omission of the "in any respect" language found in subpart (h) and its pointed distinction between motions to modify and motions seeking purely clerical corrections indicate that the respective provisions have different triggers. Thus, any change to a judgment made by the trial court while it retains plenary jurisdiction will restart the appellate timetable under Rule 329b(h), *Check,* 758 S.W.2d at 756, but only a motion seeking a substantive change will extend the appellate deadlines and the court's plenary power under Rule 329b(g). *See Cavalier Corp. v. Store Enter., Inc.,* 742 S.W.2d 785, 786 (Tex.App.—Dallas 1987, writ denied).

Justice Hecht's concurring opinion questions the wisdom of requiring that a Rule 329b(g) motion actually seek a substantive change. He argues that such a requirement creates a trap for the unwary appellate practitioner—a trap that is not warranted by the rule's language or its history. But his historical view demonstrates, and he concedes, that there is almost no history pertaining to subpart (g) in the minutes of the Rules Advisory Committee. He therefore must impute the Committee's concerns about subpart (h) to subpart (g), suggesting that the Committee impliedly intended for a party's rights under subpart (g) to mirror the trial court's power under subpart (h). We disagree. The history upon which Justice Hecht relies and the language adopted by this Court indicate that a party's right to move for a modification and the court's power to change its judgment are not coextensive.

■ A motion to modify, correct or reform a judgment was always intended to embody something other than a motion for judgment nunc pro tunc.[4] That distinction continues in the express language of Rule 329b(g) today. Even Justice Hecht ultimately concludes that a motion seeking a purely clerical change cannot qualify under Rule 329b(g). 10 S.W.3d at 313 (Hecht, J. concurring). But any change made by the court under subpart (h) prior to losing jurisdiction, even a clerical change, will restart the appellate timetable. Accordingly, Justice Hecht must concede that the modifications that trigger subpart (h) are not identical to those that trigger subpart (g). Because we are in agreement on this point, Justice Hecht manufactures a dispute by imagining that the Court intends for the application of Rule 329b(g) to depend upon the relative degree of substance contained in the motion. In fact, we intend no such thing. A timely filed postjudgment motion to incorporate sanctions into a new final judgment qualifies under Rule 329b(g) without regard to the relative value of the sanction imposed or even whether the sanction has any express monetary value. In contrast, a timely filed

4. As Chief Justice Guittard explained, the "kind of a motion, which is filed to correct a judgment within the period of the courts plenary power, is to be distinguished from a motion to correct the record of a judgment nunc pro tunc under rules 316 and 317." 10 S.W.3d at 318 (Hecht, J. concurring)(quoting from Minutes of the May 5, 1979 meeting of the Advisory Committee for the Supreme Court of Texas, at 174 (on file with the Supreme Court of Texas)).

postjudgment motion that merely seeks to correct clerical errors, such as punctuation, grammar or misspellings, will not qualify under Rule 329b(g).

We accordingly hold that a timely filed postjudgment motion that seeks a substantive change in an existing judgment qualifies as a motion to modify under Rule 329b(g), thus extending the trial court's plenary jurisdiction and the appellate timetable. *See Gomez v. Texas Dep't of Crim. Justice*, 896 S.W.2d 176, 176–77 (Tex.1995) (*citing Miller Brewing Co. v. Villarreal*, 822 S.W.2d 177, 179 (Tex.App.—San Antonio 1991), *rev'd on other grounds*, 829 S.W.2d 770 (Tex.1992)) (timely postjudgment motion seeking substantive change extends appellate timetable). The court of appeals' judgment is correct, and it is therefore affirmed.

Justice HECHT filed a concurring opinion.

Justice ENOCH filed a concurring opinion, in which Justice OWEN joined.

Justice HECHT, concurring in the judgment.

Appellate procedure should not be tricky. It should be simple, it should be certain, it should make sense, and it should facilitate consideration of the parties' arguments on the merits. Ninety-three years ago Roscoe Pound included among *The Causes of Popular Dissatisfaction with the Administration of Justice* the following criticism of appellate procedure in American jurisprudence:

> One may search the recent English reports in vain for a case where an appeal has miscarried on a point of practice. Cases on appellate procedure are wanting. In effect there is no such thing. The whole attention of the court and of

counsel is concentrated on the cause. On the other hand, our American reports bristle with fine points of appellate procedure.... All of this is sheer waste, which a modern judicial organization would obviate.[1]

Simplicity and certainty in appellate procedure are nowhere more important than in determining the time for perfecting appeal. Recognizing that, this Court rewrote Rule 329b of the Texas Rules of Civil Procedure in 1981 to clarify how postjudgment motions affect the time period that a trial court retains plenary power to modify or vacate the judgment, and the deadlines for perfecting appeal.[2] Only minor changes have been made in the rule since it was adopted, and none affects the case before us today, which focuses on the first sentence of Rule 329b(g). That sentence states:

> A motion to modify, correct, or reform a judgment (as distinguished from motion to correct the record of a judgment under Rule 316), if filed, shall be filed and determined within the time prescribed by this rule for a motion for new trial and shall extend the trial court's plenary power and the time for perfecting an appeal in the same manner as a motion for new trial.

This case raises three questions, which are: does a motion filed within the trial court's plenary jurisdiction extend that jurisdiction and the time for perfecting appeal in the same manner as a motion for new trial if it requests:

(1) that the judgment be changed to include sanctions?

(2) that additional relief such as sanctions be granted, without specifically requesting a change in the judgment?

---

1. Roscoe Pound, *The Causes of Popular Dissatisfaction with the Administration of Justice*, 29 A.B.A. Rep. 395, 410–411 (1906), *reprinted in* 8 Baylor L.Rev. 1, 19–20 (1956).

2. *See* Order of Supreme Court of Texas, Adopting Amendments to Rules of Civil Procedure, 599–600 S.W.2d (Texas Cases) xxxiii, l-li (June 10, 1980, eff. Jan. 1, 1981). All references to rules are to the Texas Rules of Civil Procedure.

(3) a nonsubstantive change in the judgment?

I agree with the Court that the answer to the first question is yes, but I disagree with the Court's "no" answers to the other questions. The Court's conclusions create two "tricks" in post-judgment procedure. Here is the first one:

> Trick No. 1: Whether a post-judgment motion for sanctions extends the trial court's plenary power and the deadline for perfecting appeal depends upon whether it specifically requests that sanctions be included "in the judgment", as opposed to being imposed in a separate order as they could be. If the motion contains the magic words, then it extends the trial court's plenary power and the deadline for perfecting appeal, just as a motion for new trial would. Whether the court grants or denies the motion, or it is denied by operation of law, the aggrieved party can appeal. But if the motion does not contain the magic words, then it does not affect the court's plenary power or the appellate deadlines. If the court denies the motion within its plenary jurisdiction, the movant can appeal, but if the court does not rule on the motion before its plenary power expires, or denies it so near the expiration of its plenary power that the movant cannot file a notice of appeal, the movant cannot appeal. If the court grants the motion so near the expiration of its plenary power that the party against whom sanctions are awarded cannot file a notice of appeal, it is unclear whether that party can appeal. Thus, a losing party may move for sanctions without specifying that they be included in the judgment and put the winning party to a choice between moving for a new trial or risking the inability to appeal the sanctions order. But even if the motion does not specifically request that sanctions be included in the judgment, if the court modifies the judgment to include them, even if they are minuscule, then the time periods for the court's plenary power and for appeal recommence on the date of the modified judgment.

If any justification exists, or could have existed in 1981, for so complex a procedure, the Court does not hint at what it could be. Perhaps the lesson is that a party can achieve certainty simply by adding the words, "in the judgment", to its post-judgment motion, and a party who is not careful enough to do so deserves whatever befalls. But the Court's purpose in making rules to date has been to remove unfair and unanticipated traps, not to create them. Today's decision is a departure. Parties' appellate rights ought not to depend on whether a post-judgment motion includes or omits three words—"in the judgment"—and nothing suggests that the Court was ever of a different view until today.

There is more. Here is the second "trick" the Court creates:

> Trick No. 2: Although Rule 329b(g) does not say so, a motion to modify a judgment does not extend the court's plenary power or the appellate deadlines unless the motion requests a "substantive" change, whatever that means. Thus, even if a post-judgment motion specifically requests that the judgment be modified to include sanctions, it may not extend the court's plenary power or the appellate deadlines if the requested change is not "substantive". In fact, no post-judgment motion that requests a "non-substantive" change in the judgment—whether sanctions or something else—affects the court's plenary power or the appellate timetable. However, if the court makes any change in a judgment, no matter how minuscule—adding a comma, for example—the time periods for the court's plenary power and for appeal recommence.

Discussions involving the Court and its advisors when Rule 329b was written reflect a broad consensus that a party should not have to stake its right to appeal on correctly guessing whether a change in a

judgment is substantive. Correctly guessing whether a *requested* change is substantive is no less risky. Any explanation why the Court would ever have intended to remove one risk but create another, implicitly and without using the word "substantive" anywhere in the rule, cannot be found in today's opinion.

Beyond question, when this Court adopted Rule 329b of the Texas Rules of Civil Procedure in 1981, it intended to clarify and simplify post-judgment procedure in general, and specifically, the procedure governing motions to modify judgments. Today's decision does not smooth the road to appeal; it creates pitfalls to trap the unwary by implying conditions and words that cannot be found in the rule. For the sake of clarity and simplicity, I would hold that under Rule 329b(g), a post-judgment motion requesting any relief that could be included in the judgment extends the trial court's plenary power over the judgment and the deadline for perfecting appeal. Accordingly, I concur only in the Court's judgment.

## I

To begin, it is useful to recount the history of Rule 329b(g) and related subsection (h). Both deal with motions to modify, correct, or reform a judgment.

Before 1981, no rules prescribed procedures for modifying, correcting, or reforming judgments.[3] In 1979, Chief Justice Clarence Guittard of the Court of Appeals for the Fifth District of Texas at Dallas, as chair of a joint committee of the Texas Judicial Council and the State Bar of Texas Committee of the Administration of Justice, proposed changes in the rules relating to appellate procedure, including a complete revision of Rule 329b, which governed motions for new trial. Chief Justice

Guittard proposed that Rule 329(g) and (h) state:

(g) A motion to modify, correct, or reform a judgment (as distinguished from motion to correct the record of a judgment under Rules 316 and 317), if filed, shall be filed and determined within the time prescribed by this rule for a motion for new trial and shall extend the trial court's plenary power and the time for perfecting an appeal in the same manner as a motion for new trial. Each such motion shall be in writing and signed by the party or his attorney and shall specify the respects in which the judgment should be modified, corrected, or reformed. The overruling of such a motion shall not preclude the filing of a motion for new trial, nor shall the overruling of a motion for new trial preclude the filing of a motion to modify, correct, or reform.

(h) If a judgment is modified, corrected, or reformed, the time for appeal shall run from the time the modified, corrected, or reformed judgment is signed; but if the modified, corrected, or reformed judgment makes no material or substantial change in the original judgment, so that the only practical effect would be to extend the time for appeal, then the time for appeal shall run from the date the original judgment was signed.[4]

Comments appended to the proposals explained:[5]

[ ] Subdivision (g) formulates the procedures for modification of a judgment within the time that the court has plenary power to do so, as recognized by the Supreme Court in such cases as *Transamerican Leasing Co. v. Three Bears, Inc.*, 567 S.W.2d 799 (Tex.1978); Mathes

---

3. *See* Thomas M. Reavley & David L. Orr, *Trial Court's Power to Amend Its Judgments*, 25 Baylor L.Rev. 191, 206 (1973) ("The procedure governing the exercise of a trial court's plenary power before the judgment becomes final is not well-established.").

4. Agenda for the May 4–5, 1979 Meeting of the Advisory Committee for the Supreme Court of Texas, at 42–43 (on file with the Supreme Court of Texas).

5. *Id.* at 44 (footnotes added).

v. Kelton, 569 S.W.2d 876 (Tex.1978); *City of West Lake Hills v. State*, 466 S.W.2d 722 (Tex.1971). It obviates the filing of a motion for new trial when the relief actually sought is modification of the judgment. *See Mercer v. Band*, 454 S.W.2d 833 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ).

[ ] Subdivision (h) explains that the judgment must be modified in a material respect to start the appellate timetable running from the modified judgment, as held in such cases as Anderson v. Casebolt, 493 S.W.2d 509 (Tex.1973). This rule would not affect the court's power to correct a clerical error in the record of a judgment without limitation as to time under Rules 316 [6] and 317.[7]

6. At the time, Rule 316 stated:

> Rule 316. CORRECTION OF MISTAKES.—Mistakes in the record of any judgment or decree may be amended by the judge in open court according to the truth or justice of the case after notice of the application therefor has been given to the parties interested in such judgment or decree, and thereafter the execution shall conform to the judgment as amended.
>
> The opposite party shall have reasonable notice of an application to enter a judgment nunc pro tunc.

Order of the Supreme Court of Texas, Adopting Amendments to Rules of Civil Procedure, 141 Tex. 647, 655–656 (June 16, 1943, eff. Dec. 31, 1943).

7. At the time, Rule 317 stated:

> Rule 317. MISRECITALS CORRECTED.—Where in the record of any judgment or decree of a court, there shall be any omission or mistake, miscalculation or misrecital of a sum or sums of money, or of any name or names, if there is among the records of the cause any verdict or instrument of writing whereby such judgment or decree may be safely amended, it shall be corrected by the court, wherein such judgment or decree was rendered, or by the judge thereof in vacation, upon application of either party, according to the truth and justice of the case. The opposite party shall have reasonable notice of the application for such amendment.

Order of the Supreme Court of Texas, Adopting Rules of Civil Procedure, 136 Tex. 442, 537 (Oct. 29, 1940, eff. Sept. 1, 1941).

At the May 1979 meeting of the Advisory Committee for the Supreme Court of Texas, Chief Justice Guittard explained that proposed Rule 329b(h) merely restated the law,[8] but several members of the Committee expressed concern that a party could not reliably determine whether a change in a judgment was substantive, so as to extend the appellate timetable, or not.[9] Others, including former Chief Justice Robert W. Calvert, were concerned that trial judges would make small changes in judgments to extend the appellate timetable as a favor to counsel.[10] At the conclusion of the debate, the Committee voted 18 to 4 to recommend to the Supreme Court the changes in Rule 329b

8. "The proposal in subdivision (h) of proposed Rule 329b is to state the present law with respect to when a modification or change or correction of the judgment would start the time running again for a motion for new trial on appeal." Minutes of the May 5, 1979 Meeting of the Supreme Court Rules Advisory Committee, at 171 (on file with the Supreme Court of Texas).

9. For example:

> [James R.] Meyers: Clarence, doesn't that put a litigant in the position of not knowing whether an appellate court would say it's a substantive change or not and have him to perfect his appeal early?
>
> [Chief Justice] Guittard: I think he is in that position. I don't know that we've been able to remedy that position.

Minutes of the May 5, 1979 Meeting of the Advisory Committee for the Supreme Court of Texas, at 170 (on file with the Supreme Court of Texas). Luther H. Soules III and W. James Kronzer echoed Meyers' concerns. *Id.* at 170, 172.

10. "[Chief Justice] Calvert: Mr. Chairman, ... I think most of us realize that judges and most humans like to keep good relationships with their friends, lawyers, who have practiced before them, and if the fellow's lost his appeal by not ... on time, well, he's going to say, 'Look, judge, my client will lose everything unless you put this in here' ... and the judge does it to let him have his day in court." Minutes of the May 5, 1979 Meeting of the Advisory Committee for the Supreme Court of Texas, at 171 (on file with the Supreme Court of Texas). Sam Sparks also expressed concern for delay. *Id.* at 172.

proposed by Chief Justice Guittard.[11]

At the conclusion of the meeting, however, the Committee voted to delay finalization of the appellate rules so that they could be considered further. At the Advisory Committee's next meeting six months later, members' attitudes had shifted. Chief Justice Guittard explained:

> There's also the problem now that a motion to correct, modify, or reform a judgment is recognized by the law and by some recent Supreme Court opinions, but there's no procedure provided in the rules for it. As a matter of fact, when you want to correct or reform a judgment, under present law you can't do that like you—sometimes often a motion for new trial has to be filed when you don't want a new trial, you merely want the judgment changed. This would correct that to permit a motion to modify, correct, or reform to be filed within the time that a motion for new trial is allowed and have the same effect with respect to the times for appeal, but it's provided that that kind of a motion, which is filed to correct a judgment within the period of the court's plenary power, is to be distinguished from a motion to correct the record of a judgment nunc pro tunc under Rules 316 and 317.
>
> There's also a provision that if the judgment is modified—subdivision (h)—that if it makes no material or substantial change so that the only practical effect would be to extend the time for appeal, then the time for appeal shall run from the date the original judgment was signed. Now that, as I understand it, declares the present law and is simply a warning to counsel. Now there was

some proposal in our discussion at our last meeting that we change the law in that respect, and if so, that's a matter to be considered now.[12]

Russell Talbot, W. James Kronzer, Wayne Fisher, Gilbert Adams, and Gilbert I. Low all indicated concern that the "no material or substantial change" proviso of proposed subsection (h) was too uncertain to be workable.[13] Former Chief Justice Calvert announced that he had reconsidered his earlier view and decided that the proviso should be eliminated.[14] Fisher moved, seconded by Mark Martin, that proposed subsection (h) be amended to read as follows:

> (h) If a judgment is modified, corrected, or reformed, the time for appeal shall run from the time the modified, corrected, or reformed judgment is signed.[15]

However, Chief Justice Guittard expressed concern that courts would read a "material or substantial" proviso into the rule if it were not explicitly excluded:

> I have no real objection to this, but I would raise this question. In view of the decisions, would this really do what we're intending for it to do without some further clarification. In other words, it says "modified, corrected, or reformed judgment." Would the courts, under existing decisions, then go ahead and say that this change is immaterial, therefore it's not really a modified, corrected, or reformed judgment. I'm not sure that it would accomplish the purpose that we're setting out without some additional language.[16]

In response, Russell Talbot suggested that the words, "in any respect", be added,[17] so that proposed subsection (h) would read:

11. Minutes of the May 5, 1979 Meeting of the Advisory Committee for the Supreme Court of Texas, at 174 (on file with the Supreme Court of Texas).

12. Minutes of the Nov. 16, 1979 Meeting of the Advisory Committee for the Supreme Court of Texas, at 27 (on file with the Supreme Court of Texas).

13. *Id.* at 29–35.

14. *Id.* at 36–37.

15. *Id.* at 34–35.

16. *Id.* at 35.

17. *Id.*

(h) If a judgment is modified, corrected, or reformed in any respect, the time for appeal shall run from the time the modified, corrected, or reformed judgment is signed.

Fisher and Martin agreed to the amendment of their motion, which then passed over only two negative votes.[18]

I have made scant mention of subsection (g) in this summary of the 1979 debates on proposed Rule 329b because the Committee's focus was entirely on on subsection (h). Yet the Committee's considered view, developed over the course of six months' consideration, that whether a change in a judgment was "material and substantive" was too ill-defined and ill-definable a standard on which to base a trial court's plenary jurisdiction or the appellate timetable, affects subsection (g) as well as subsection (h). The words, "in any respect", were added to subsection (h) only to make its intent clear. It would have made little sense for the Committee (and ultimately the Court) to have concluded that any change in a judgment, no matter how slight, would extend the trial court's plenary jurisdiction and the appellate timetable, but that a motion to make only a slight change would not affect the court's plenary jurisdiction or the time for perfecting appeal. Although the Committee did not make subsection (g) as explicit as subsection (h), the changes in the latter inform the former.

## II

Defendant's motion to include sanctions in the judgment in this case expressly requested a modification of the judgment. Under Rule 329b(g), the Court correctly concludes that the motion extended the trial court's plenary jurisdiction and the deadline for perfecting appeal. The Court adds, however, that if the motion had not expressly requested a change in the judgment itself, but had merely requested sanctions that could have been imposed by a separate order, the motion would not

have extended the court's plenary power or the appellate timetable.

The procedure the Court adopts is ill-advised for several reasons. First, the trial court's power to modify its judgment should not be dependent on the wording of a party's motion. In the Court's view, the trial court has only thirty days in which to rule on a post-judgment motion that requests additional relief but does not specifically request a change in the judgment, while the trial court would have seventy-five days to rule on the motion if it explicitly requested a change in the judgment, and a total of 105 days to modify its judgment. Second, the time for parties to appeal should not depend on one party's wording of a motion. Had the defendant in this case wanted to force the plaintiff to decide whether to appeal without knowing whether sanctions would be imposed, it could have omitted the request that sanctions be included in the judgment and asked for a hearing on the last day of the court's plenary power. Third, neither the period of the trial court's plenary power nor the parties' time for appeal should depend on any vagueness in a party's motion. A motion might not clearly state whether a change in the judgment is requested, leaving doubt about crucial deadlines. Fourth, these deadlines should not depend on how the court grants a motion that does not specifically request a change in the judgment. If the court chooses to modify the judgment, even though the motion does not request such a modification, the deadlines are extended. But if the court chooses instead to award sanctions in a separate order, the deadlines are not extended. The parties may not know what ruling the court will make until the time for appeal has expired.

The Court's result is not necessitated by the language of the rule. Rule 329b(g) does not state that a motion must explicitly request a change in a judgment in order to have the effect of a motion for new trial.

---

18. *Id.* at 37.

In *Gomez v. Texas Department of Criminal Justice*, we held that a bill of review filed within thirty days of the date a judgment was signed should be treated as a motion for new trial because the bill of review "assailed the trial court's judgment." [19] Any filing that could have that effect should extend the trial court's plenary power and the appellate deadlines.

Moreover, there is nothing in the debates over Rule 329b to suggest that the drafters had in mind anything other than the simplest procedure that could be devised. Their over-arching concern was that post-judgment procedures be clear, certain, and simple. When members of the Advisory Committee were uncertain whether they had achieved those goals, final approval of the rules was deferred, notwithstanding the immense amount of work that had already been devoted to them. It is inconceivable that the Advisory Committee, meeting with several members of the Court, would have intended by the straightforward language of Rule 329b(g) a procedure as byzantine as the Court adopts today.

I would hold that under Rule 329b(g), if a postjudgment motion requests relief that *could* be included in the judgment, even if it could be included in a separate order, the motion extends the trial court's plenary jurisdiction and the time for perfecting appeal.

## III

To conclude that a motion to modify a judgment extends the trial court's plenary jurisdiction and the time for perfecting appeal only if the motion requests a material or substantive change in the judgment, the Court must rewrite the rule. It contains no such requirement and never has. Moreover, the initial draft of Rule 329b(h), which did originally include such a requirement, was amended by the Advisory Committee after extended debate to exclude the requirement because of a consensus that "material and substantive" was too vague a factor to consider in trying to determine the deadline for appeal. The Court does not acknowledge the concerns expressed in the drafting of Rule 329b or explain why it is any easier to know whether a change made in a judgment is material and substantive than it is to know whether a requested change is material and substantive.

The Court's conclusion is based solely on several court of appeals' decisions that "state" that a motion for a material or substantive change is necessary. Only one of those decision has actually imposed such a requirement, but even then it did not hold that a requested change must be material and substantive, only that it not be merely a clerical correction of a party's name from Graff Vending Company to Cavalier Corporation, d/b/a Graff Vending Company.[20] In all the other cases the Court cites, the courts held that a material change was requested.[21] No case has ever

**19.** 896 S.W.2d 176, 176 (Tex.1995) (per curiam).

**20.** *Cavalier Corp. v. Store Enters., Inc.*, 742 S.W.2d 785, 787 (Tex.App.—Dallas 1987, writ denied) (holding that neither a motion to correct a judgment to add the plaintiff corporation's formal name to its assumed name, nor the corrected judgment signed outside the court's plenary jurisdiction, extended the appellate timetable).

**21.** *Ramirez v. Williams Bros. Constr. Co.*, 870 S.W.2d 551, 552 (Tex.App.—Houston [1st Dist.] 1993, no writ) (per curiam) (holding that a motion to modify or vacate the judgment extended the appellate timetable); *Unit-ed States Fire Ins. Co. v. State*, 843 S.W.2d 283, 284 (Tex.App.—Austin 1992, writ denied) (holding that a motion to correct or modify the judgment extended the appellate timetable); *Miller Brewing Co. v. Villarreal*, 822 S.W.2d 177, 179 n. 2, 179–180 (Tex.App.— San Antonio 1991) (per curiam), *rev'd on other grounds*, 829 S.W.2d 770 (Tex.1992) (per curiam) (holding that neither a prejudgment motion to disregard jury findings, a postjudgment order denying the motion, nor a postjudgment order granting a motion for judgment on the verdict extended the appellate timetable, and indicating that a motion requesting a less than substantive change in the judgment should also extend the timetable); *Brazos Elec. Power Co-op, Inc. v. Callejo*,

held that a post-judgment motion must request a material or substantive change in a judgment in order to have the same effect as a motion for new trial.

Even more troubling, the Court makes no attempt to define "material or substantive" or to give examples, other than to say that the sanctions the defendant requested in this case satisfied the requirement. A "material or substantive" change is not merely non-clerical; clerical changes requested under Rule 316 are expressly excluded from Rule 329b(g). The value of the sanction imposed is immaterial, the Court says. So what is a non-clerical, non-substantive change? A recalculation of prejudgment interest to correct an error of $100 or so? A recalculation to correct a larger error? Is it the absolute value of the requested relief that is important, or the value relative to the judgment, or the value relative to the effect on the parties? When such questions could not be satisfactorily answered in 1981, the requirement of a material and substantive change in Rule 329b(h) was omitted. Today the Court inserts the requirement into Rule 329b(g), where it has never been, without attempting to answer the problems raised nearly twenty years ago. Rule 329b(g) now recognizes three categories of requested changes in a judgment: substantive, non-substantive, and clerical.

For the same reasons that any change in a judgment, no matter how slight, recommences the time periods based on the judgment, I would hold that any requested change, however slight, other than a merely clerical change expressly excluded from Rule 329b(g), extends the trial court's plenary power and the appellate timetable.

## IV

This Court's objective in construing written language is to give effect to the intent expressed in that language by the person or persons who wrote it or who agreed to be bound by it. That is true of constitutional provisions,[22] statutes,[23] agency rules and regulations,[24] deeds,[25] contracts,[26] and wills,[27] and other such writings. When we construe a statute, we say what the Legislature intended by the words it chose. When we construe a contract or deed, we say what the parties intended by the language they agreed to. Discerning what someone else intended by a particular expression, though a routine enterprise for courts, is often a difficult one. The chosen words may not be clear, or their application in the present context may not have been anticipated or fully appreciated when they were written. A court must be careful not to substitute its own view of what should have been intended for what *was* intended.

When we construe our own procedural rules, the process is importantly different. We still look for the intent expressed in the language, but the intent we look for is

734 S.W.2d 126, 129 (Tex.App.—Dallas 1987, no writ) (holding that a motion to modify a judgment n.o.v., that was essentially a motion for judgment on the verdict, extended the appellate timetable).

22. *E.g., Edgewood Indep. Sch. Dist. v. Kirby,* 777 S.W.2d 391, 394 (Tex.1989) ("[W]e consider 'the intent of the people who adopted it' ..." "rely[ing] heavily on the literal text", quoting *Director of Dep't of Agric. & Env't v. Printing Indus. Ass'n,* 600 S.W.2d 264, 267 (Tex.1980)).

23. *E.g., City of LaPorte v. Barfield,* 898 S.W.2d 288, 292 (Tex.1995) ("Legislative intent remains the polestar of statutory construction.").

24. *E.g., Rodriguez v. Service Lloyds Ins. Co.,* 997 S.W.2d 248, 254 (Tex.1999) ("In construing [an agency] rule, our primary objective is to give effect to the [agency's] intent.").

25. *E.g., Concord Oil Co. v. Pennzoil Exploration & Prod. Co.,* 966 S.W.2d 451, 459 (Tex. 1998).

26. *E.g., Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994) ("When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent.").

27. *E.g., McGill v. Johnson,* 799 S.W.2d 673, 674 (Tex.1990).

our own, not someone else's. We may conclude that the language of the rule is unclear, or that its present application was not anticipated,[28] or that things have changed so that the procedure once adopted is no longer well-advised.[29] The answer in each of these instances is that the rule should be changed.[30] The one conclusion it seems to me that we cannot reach in construing a rule is that we knew when we wrote it that the procedure would not work well but we intended to adopt it anyway. If that were the case, we should not be writing rules. The language of the rule should be read amenably to the basic proposition that at the time, at least, we intended to adopt good procedures, not bad ones.

There is no question that that was the Court's intent in adopting Rule 329b. The rule was completely redrafted by a group of the State's leading lawyers and judges that had worked on it and other rules affecting appellate procedure for years. The problem is not that a procedure once thought workable has become less so, or that the current application was unanticipated. Monetary sanctions were not awarded as frequently in 1981, but they were available.[31] The procedure that the Court now says it intended in 1981 was no more workable then than now.

Ignoring the history of the drafting of Rule 329b and the practical consequences of its own construction, the Court focuses entirely on the words of the rule. While I do not disagree that we must be guided by plain language in a rule, just as we must when it appears in a statute or contract, the language of Rule 329b(g) cannot be read in isolation from the post-judgment practice it was addressing. If the rule can be read to adopt a procedure that is complicated for no reason and likely to cause uncertainty in parties' perfecting appeal, or a procedure that it simple to understand and apply and protective of the right of appeal, it should choose the latter. The Court should certainly not insert a requirement into a rule that does not exist and that was omitted because it was thought too vague to apply.

I agree with the result the Court reaches in this case, but I strongly disagree with the approach it takes in construing its own rules and its disregard for the injustice that its construction will work for many litigants and attorneys who believe, rightly, that appeal ought to be a far simpler process than the Court makes it. If Roscoe Pound was right, as I think he was, and "[a]ll of this is sheer waste," then this Court has refused to obviate it as a "modern judicial organization" would.[32]

\* \* \* \* \*

Accordingly, I concur only in the Court's judgment.

Justice ENOCH, joined by Justice OWEN, concurring.

I agree with Justice Hecht's conclusions except to the extent he would permit a postjudgment motion that requests relief that **could** be included in the judgment to extend the trial court's plenary jurisdiction and the time for perfecting an appeal. The time-focus of Rule 329b[1] is predicated

---

**28.** *State Dep't of Highways & Public Transp. v. Payne,* 838 S.W.2d 235, 241 (Tex.1992) ("The flaws in our charge procedures stem partly from the rules governing those procedures and partly from caselaw applying those rules.").

**29.** *Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 914 (Tex.1992) ("To say that [Rule 215(5) of the Texas Rules of Civil Procedure] has proven to be problematic is perhaps an understatement.").

**30.** *Id.* at 915; *accord Payne,* 838 S.W.2d at 241.

**31.** *E.g., Firestone Photographs, Inc. v. Lamaster,* 567 S.W.2d 273 (Tex.Civ.App.—Texarkana 1978, no writ).

**32.** Pound, *supra* note 1, at 19–20.

**1.** *See* Tex.R. Civ. P. 329b(g).

on a motion assailing the judgment. Consequently, the postjudgment motion must target the judgment in order to extend the court's plenary jurisdiction under Rule 329b.

Rule 329b(g) refers to a "motion to modify, correct, or reform a judgment."[2] At a minimum, the motion must alert the court to the fact that the movant wants the judgment changed—whether because of the nature of the relief requested or by an explicit request that the judgment be changed. A request for relief that could, but need not, be included in a final judgment is not sufficient.

In any event, I agree with Justice Hecht that a timely-filed postjudgment motion that seeks a change in an existing judgment, whether or not the change sought is material or substantial, qualifies as a Rule 329b(g) motion to modify. Because the Court holds that the change must be substantial, I can only concur in the judgment.